UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| WOODFORDS FAMILY SERVICES, INC. )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>LAURA CASEY )<br>)<br>and )<br>)<br>LOOK AT ME NOW, LLC )<br>)<br>Defendants ) | Case No.: _____ |

**COMPLAINT**

Plaintiff Woodfords Family Services, Inc. for its complaint against Laura Casey and Look at Me Now, LLC, states as follows.

INTRODUCTION

1.　This is an action brought by WOODFORDS FAMILY SERVICES, INC. ("Woodfords") a Maine non-profit corporation providing community-based family support and educational services to individuals with special needs, to recover damages arising from misappropriation of Woodfords' trade secrets, misappropriation of Woodfords' idea or ideas, breach of fiduciary duty and confidence by, and unjust enrichment of, Defendants LAURA CASEY ("Casey") and LOOK AT ME NOW, LLC ("LMN") (collectively "Defendants"); to enjoin Defendants from future use of Woodfords' proprietary and confidential information and ideas; and for a declaratory judgment regarding Woodfords' and Defendants' respective rights in and ownership of expressive works created by Casey or with Casey's help while Casey was a Woodfords

1

employee.

## PARTIES

2.  Plaintiff Woodfords Family Services, Inc. ("Woodfords") is a non-profit corporation organized and existing under the laws of the State of Maine with a principal place of business in Westbrook Maine.

3.  Defendant Laura Casey is a resident of North Waterboro, Maine. At all relevant times hereto until September 16, 2011, Casey was employed by Woodfords.

4.  Defendant Look at Me Now, LLC ("LMN") is a Maine limited liability company with a place of business in Portland, Maine.

## JURY TRIAL DEMAND

5.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues triable to a jury.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over Plaintiff's copyright ownership claim pursuant to the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331 and 1338(a), and the Declaratory Judgment Act 28 U.S.C. § 2201.

7.  This Court has supplemental jurisdiction over Plaintiff's claims arising under the Maine Uniform Trade Secrets Act, 10 M.R.S. §§ 1541 *et seq.* because these claims are so related to Plaintiff's claims arising under Federal Law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.  Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391 because Defendants are doing business within the State of Maine and have committed unlawful acts causing injury in Maine.

FACTUAL ALLEGATIONS

9. Woodfords is a Maine nonprofit organization that provides community based family support and educational services to individuals with special needs through a number of programs and initiatives, including an early childhood services program, which provides young children with developmentally appropriate experiences and activities while addressing goals and objectives in the areas of cognition, speech/language development, gross and fine motor skills, and social-emotional/behavioral development.

10. In the spring of 2007, Woodfords began searching for a program director for its early childhood services program (the "Program Director").

11. The position description for the Program Director provided in part that "[t]he Program Director is responsible for overseeing the operation of the program(s), supervising and providing support to the staff[,] and . . . guid[ing] children toward the fulfillment of their potential for intellectual, emotional, and psychological growth and maturation." It also described the duties and responsibilities of the position as including, among other things, "supervis[ing] the development of program plans and direct[ing] the implementation of developmentally appropriate curriculum," "participat[ing] actively in agency/program fundraising efforts," and "perform[ing] such other duties and assum[ing] such other responsibilities as appropriately assigned by the Executive Director."

12. Casey applied for the Program Director position and was hired in May of 2007.

13. One function of Casey's position as Program Director was to develop enhanced services within her area of responsibility.

14. As Program Director Casey reviewed and approved Woodfords' agency compliance plan

annually. The agency compliance plan provides that all employees are responsible to protect and preserve Woodfords' assets, including information, and that improper financial gain resulting from misconduct involving the property of Woodfords' is strictly prohibited.

15.     In mid-January, 2010, Casey approached Kerry de Bree ("Ms. de Bree"), Woodfords' Director of Development, with an idea for a museum for developmentally disabled children that would help Woodfords diversify its revenue sources during a period of economic stagnation and shrinking funding (the "Museum Project"). One element of the Museum Project was a video self-modeling exhibit or station. Video self-modeling involves individuals, often children, watching themselves successfully performing a behavior on video and then replicating that behavior on their own.

16.     On February 4, 2010 Woodfords approved the Museum Project and formed a committee to implement it.

17.     Ms. de Bree and Casey reserved Friday afternoons to work on the Museum Project, and used Woodfords' office equipment and other business property to do so. Casey and Ms. de Bree also worked on the Museum Project at night and on the weekends.

18.     Over the course of February 2010, the committee met a number of times to discuss the Museum Project.

19.     On March 4, 2010 Ms. de Bree and Casey presented the Museum Project to the Woodfords Facilities and Resource Development Committee ("WFRDC"). At that meeting Woodfords' then-executive director informed everyone at the meeting that everything discussed there was to be kept confidential, and was not to be discussed outside the WFRDC.

20.     In or around late March or early April of 2010, Jessica Meehan ("Ms. Meehan"), a parent of a Woodfords student, joined the committee.

21. As part of her involvement with the committee, Ms. Meehan suggested using the video self-modeling element of the Museum Project as a separate product to fund the Museum Project.

22. Casey, Ms. de Bree, and Ms. Meehan were tasked with developing the video self-modeling product concept, and the ways in which it would function and could be developed, marketed, and distributed.

23. Through various meetings and discussions between and among Casey, Ms. de Bree, and Ms. Meehan taking place in or around April 2010 through June 2010, Casey, Ms. de Bree, and Ms. Meehan decided that Woodfords' video self-modeling product should be web-based so that anyone with a picture of their child would be able to quickly and easily access the video self-modeling technology.

24. Casey, Ms. de Bree, and Ms. Meehan therefore decided that Woodfords should develop a system and computer software through which customers could upload a photo of their child's face to a website, or otherwise electronically transmit a photo to Woodfords, at which point the child's face would be superimposed onto the head and body of a non-descript child featured in a template video showing the child completing a task, which video could then be purchased and downloaded or otherwise transmitted to the customer (the "Video Self-Modeling Product").

25. Woodfords was and is not aware of any products and/or systems on the market or in development similar to the Video Self-Modeling Product, other than the products offered on Look at Me Now's website.

26. On July 19, 2010, Casey, Ms. de Bree, Woodfords' then-executive director, and Woodfords' current executive director Dr. Paul Nau ("Dr. Nau") met with individuals from Current Motion Videographers ("Current Motion") to discuss the Video Self-Modeling Product. At that meeting Woodfords officials made clear to the representatives from Current Motion that

all information provided and discussed that day and at any point in the future was to be kept confidential. Later the representatives from Current Motion signed work-for-hire and non-disclosure agreements in order to protect Woodfords' rights and interests in the Video Self-Modeling Product.

27.     On February 10, 2011 Ms. de Bree submitted a $12,500 funding request to the Maine Technology Institute, seeking funding for the continued development of the Video-Self Modeling Product.

28.     Later that same month, Ms. de Bree submitted a $7,500 grant proposal to the Sam L. Cohen Foundation, also seeking funding for the continued development of the Video-Self Modeling Product.

29.     In mid-to-late March 2011, Woodfords received a $12,500 grant from the Maine Technology Institute to help fund development of the Video Self-Modeling Product. A portion of that grant was specifically allocated to pay for Casey's work on the Video Self-Modeling Product. Woodfords paid Casey a salary for her work as Program Director, but a portion of her salary related to particular projects was often paid through project grant funds.

30.     On June 13, 2011 Woodfords received a $7,500 grant from the Sam L. Cohen Foundation to help fund development of the Video Self-Modeling Product.

31.     After receiving the grants described above, Woodfords continued to take steps to protect its rights and interests in the video self-modeling product, including intentionally leaving references to the grants and Video Self-Modeling Product vague in public materials, and carefully limiting the type and amount of information regarding the video self-modeling product that circulated within and outside of Woodfords.

32.     Those involved in the Video Self-Modeling Product's development, including Casey,

took part in multiple conversations about how the Video Self-Modeling Product was a Woodfords product which was designed to generate revenue for Woodfords. Those working on the Video Self-Modeling Product understood that all information related to the project was to be kept confidential. Despite this understanding Casey disclosed Woodfords' confidential and proprietary information regarding the Video Self-Modeling Product to her father while employed by Woodfords.

33. On June 17, 2011 Current Motion shot the first in a series of videos for the Video Self-Modeling Product.

34. All of Casey's work in the conceptualization and development of the Video Self-Modeling Product was within the scope of her employment as Program Director at Woodfords.

35. On September 1, 2011 Defendant submitted a letter of resignation to Dr. Nau effective September 16, 2011.

36. Subsequent to Defendant's resignation, Defendant claimed that she owned a copyright in works possibly related to video self-modeling.

37. By letter dated October 6, 2011, Defendant, through her attorney, provided notice that any works created by Casey related to video self-modeling while she was employed at Woodfords were her exclusive property and that she possessed all copyright, patent, trade secret or other intellectual property rights and/or interests in them. *See* **Exhibit A** attached hereto.

38. At virtually the same time Dr. Nau discovered a website: http://www.lookatmenow.org, a link to which was on Casey's Facebook page, marketing a video self-modeling product virtually identical to the one that Casey was spearheading the development of at Woodfords before her resignation.

39. LMN controls www.lookatmenow.org.

40. www.lookatmenow.org is currently under construction and is scheduled to launch no later than December 1, 2011.

41. On information and belief, Casey and LMN created literary, pictorial or photographic, audiovisual, and/or other creative works for use on the lookatmenow.org website while Casey was employed by Woodfords.

42. Woodfords continues to move forward with development of its Video Self-Modeling Product.

## COUNT I
### (Declaratory Relief – Copyright Ownership)

43. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 42 of this complaint as if fully set forth herein.

44. There is a real and actual controversy between Woodfords and Defendants regarding whether Woodfords is the author and copyright holder of the literary, photographic, audiovisual, and/or other creative works Casey created or helped to create related to the Video Self-Modeling Product while she was a Woodfords employee.

45. Working within the scope of her employment with Woodfords, Casey created and helped to create literary, photographic, audiovisual, and other creative works related to Woodfords' Video Self-Modeling Product.

46. However, Casey contends that any works she created related to video self-modeling while she was employed at Woodfords are her exclusive property and that she possessed all copyright, patent, trade secret or other intellectual property rights and/or interests in them.

47. Woodfords contends that it is the author and copyright holder of such works, including any such works utilized on or by Casey, LMN, and lookatmenow.org, pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the work for hire doctrine, because Casey created or helped to

create said works within the scope of her employment as Program Director.

48. Woodfords therefore requests that the Court determine and adjudge that Woodfords' is the author and copyright holder of any and all copyrightable works that Casey created or helped to create while a Woodfords employee, including those works copied, reproduced, displayed, and/or distributed by Defendants on the lookatmenow.org website.

## COUNT III
(Misappropriation of Trade Secrets – 10 M.R.S. §§ 1541 *et seq.*)

49. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 48 of this complaint as if fully set forth herein.

50. While at Woodfords, Casey acquired confidential information related to the Video Self-Modeling Product (the "Confidential Information") which is exclusive to Woodfords and not generally known in the community-based family support and educational services industry.

51. Woodfords has protected and maintained the secrecy of the Confidential Information by, among other things, repeatedly stressing to Woodfords employees the confidential and proprietary nature of said Confidential Information, intentionally leaving references to the Confidential Information vague in public materials, restricting distribution and access to the Confidential Information, and distributing documentation regarding employee use of the Confidential Information.

52. Woodfords derives actual and potential economic value from its Confidential Information.

53. Woodfords' Confidential Information constitutes trade secrets under the Uniform Trade Secrets Act contained in 10 M.R.S.A. §§ 1541-1548.

54. Casey acquired Woodfords' trade secrets under circumstances giving rise to a duty to maintain its secrecy and limit its use.

55. Casey and LMN have used, disclosed, and misappropriated Woodfords' trade secrets in an effort to gain an unfair competitive advantage and to diminish Woodfords' competitive advantage, all for their own financial benefit.

56. These actions constitute actual and threatened misappropriation of trade secrets in violation of the Uniform Trade Secrets Act contained in 10 M.R.S.A. §§ 1541-1548.

57. As a result of Defendants' misappropriation, Woodfords has been damaged, and Defendant has been unjustly enriched, in an amount to be proved at trial.

58. Unless restrained, Defendants will continue to misappropriate Woodfords' trade secrets.

59. Defendants' misappropriation of Woodfords' trade secrets was intentional, willful, and malicious.

## COUNT III
### (Misappropriation of Idea)

60. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 59 of this complaint as if fully set forth herein.

61. Woodfords' Video-Self Modeling Product represents a clearly expressed and well documented, novel, original idea.

62. Such idea is Woodfords property.

63. Casey acquired Woodfords' idea through a confidential relationship between Casey and Woodfords, where Woodfords entrusted Casey with confidential information regarding the idea.

64. Such relationship created a fiduciary relationship between Casey and Woodfords.

65. Casey misappropriated Woodfords' idea in an effort to gain a competitive advantage for her own financial benefit in breach of her fiduciary relationship with Woodfords.

## COUNT IV
### (Breach of Fiduciary Duty or Confidential Relationship)

66. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 65 of this complaint as if fully set forth herein.

67. As Program Director, Casey was entrusted with confidential and proprietary information and trade secrets regarding, among other things, the Video Self-Modeling Product, and Casey owed a duty of confidence and fiduciary duty to Woodfords at all relevant times.

68. Casey breached her duties by surreptitiously stealing Woodfords' confidential trade secret information and ideas through improper means and by making or intending to make improper use of that information and those secrets for purposes contrary to Woodfords' interests.

69. As a direct and proximate result of the wrongful conduct of Defendants, Woodfords has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.

70. Alternatively, as a direct and proximate result of the wrongful conduct of Defendants, Woodfords has suffered and continues to suffer substantial money damages in an amount to be proved at trial.

## COUNT V
### (Unjust Enrichment)

71. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 70 of this complaint as if fully set forth herein.

72. By their wrongful actions Defendants Casey and LMN have been unjustly enriched at Woodfords' expense.

73. It is against fairness and justice to permit Defendants to retain the benefits derived from their wrongful conduct.

74. As a direct and proximate result of Defendants' wrongful conduct Woodfords has

suffered and continues to suffer irreparable injury.

WHEREFORE, Plaintiff Woodfords Family Services, Inc. requests relief as follows:

1. That the Court enter a judgment against Defendants that;

    a. they have willfully misappropriated Woodfords' trade secrets in violation of 10 M.R.S. §§ 1541 *et seq.*;

    b. Casey willfully misappropriated Woodfords' proprietary idea or ideas related to the Video Self-Modeling Product in breach of a fiduciary relationship;

    c. Casey breached her fiduciary duty to and confidential relationship with Woodfords;

    d. they were unjustly enriched through their wrongful actions at Woodfords' expense.

2. That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from using and/or exploiting Woodfords trade secrets, ideas, or other materials or proprietary information owned by Woodfords related to the Video Self-Modeling Product.

3. That the Court enter a declaratory judgment that Woodfords is the author and copyright holder of the copyrightable works that Casey created or helped to create while a Woodfords employee, including those works copied, reproduced, displayed, distributed, or otherwise utilized on the lookatmenow.org website; and

4. That the Court order such other and further relief as the Court deems just and equitable.

Dated: November 18, 2011                    */s/ Melissa Hewey*
                                                              Melissa A. Hewey, Bar No. 3587
                                                              Elek A. Miller, Bar No. 4751
                                                               Attorneys for Woodfords Family Services

Drummond Woodsum
84 Marginal Way, Suite 600
Portland, Maine 04101
Tel: (207) 772-1941
Fax: (207) 772-3627